UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FELICIA SUTTON,

               Plaintiff,             CIVIL ACTION NO. 12-11043

       v.                    DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF           MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Felicia Sutton challenges the Commissioner of Social Security's final denial of

her benefits application.  Cross motions for summary judgment are pending (Dkts. 8, 11); Judge

Robert H. Cleland referred the motions to this Magistrate Judge for a Report and

Recommendation (Dkt. 2).

**I. RECOMMENDATION**

Because the ALJ did not fully develop the record, it is **RECOMMENDED** that:

Plaintiff's motion for summary judgment be **GRANTED**; Defendant's motion for summary

judgment be **DENIED**; and this matter be **REMANDED** for further proceedings.

**II. REPORT**

      ***A.    Administrative Proceedings***

Plaintiff applied for benefits on November 28, 2008, alleging that she became unable to

work on November 30, 2006 (Tr. 13).  The Commissioner initially denied Plaintiff's application

(Tr. 13).  Plaintiff requested a hearing and appeared without counsel before Administrative Law

Judge ("ALJ") Steven H. Templin, who considered the case *de novo*.  The ALJ found that

Plaintiff was not disabled (Tr. 13-25).  Plaintiff requested an Appeals Council review of this

decision (Tr. 8).  On February 18, 2012, the ALJ's decision became the Commissioner's final

decision when the Appeals Council declined further review (Tr. 1-3).

> **B.**     ***ALJ Findings***

Plaintiff was 34 years old on the date she allegedly became disabled (Tr. 13, 42).

Plaintiff previously worked as a caterer's helper and a home health aid (Tr. 23).  The ALJ

applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff

had not engaged in substantial gainful activity (Tr. 16).

At step two, the ALJ found that Plaintiff had the following "severe" impairments:

hypertension, adult onset diabetes and depression (Tr. 16-18).[1]  Notably, the ALJ did not find

that Plaintiff suffered from arthritis in her back and hands.  Rather, the ALJ observed:

> [Plaintiff] *alleged* that she has arthritis in her back and hands, and that her
> primary care physician (*i.e.*, one of several at Great Lakes Family Medical Center
> ("Great Lakes")) had ordered x-rays.  She provided a copy of the physician
> orders. Those orders were for chest, lumbar spine, and bilateral hand x-rays, as
> well as for echocardiography.  She testified that all of these tests were done. She
> testified that the echocardiography showed that "everything is fine," but that the
> x-rays showed arthritis in her back and hands. She testified that she has been
> prescribed Naprosyn and Flexeril because her hands cramp and hurt. She
> attributed her problems to the injuries she allegedly sustained while working for a
> friend (emphasis added, internal citations omitted) (Tr. 17).

---

[1]  The ALJ's written opinion does not follow the typical format, thus some parsing is
required to discern which specific "severe" impairments the ALJ found Plaintiff suffered from.
Normally, an ALJ's decision states "the claimant has the following severe impairments:" and
then explicitly lists them.  Here, the ALJ did not explicitly list which severe impairment(s) he
found substantiated.  Rather, the step two analysis consists of a lengthy narrative discussing
Plaintiff's ailments.  This narrative does state, in certain points, that "the medical evidence
reflects that [Plaintiff] has [BLANK]" (Tr. 17-18).  This Magistrate Judge presumes that the
ailments following this language are the "severe" impairments recognized by the ALJ.

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations (Tr. 18-19).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "unskilled work" (Tr. 19-22).[2]

At step four, the ALJ found that Plaintiff could not perform her previous work as a caterer's helper or a home attendant, as these jobs "involved tasks beyond the simple tasks identified by the reviewing mental health consultant to the DDS" (Tr. 23).

At step five, the ALJ denied Plaintiff benefits, finding she could perform a significant number of jobs available in the national economy, such as cafeteria attendant (3,600 jobs "within the lower 2/3 of...Michigan"), housekeeper/cleaner (8,000 jobs) or hand packager (5,000 jobs) (Tr. 24. The ALJ then added a restriction of "no more than brief and superficial contact with supervisors, coworkers, and members of the public," and found that Plaintiff could perform electronics worker jobs (8,000 jobs) (Tr. 24).

### C.      *Plaintiff's Claims of Error*

Plaintiff raises three arguments on appeal (1) the ALJ failed to adequately develop the record, by failing to obtain medical records concerning Plaintiff's back or hand arthritis; (2) the ALJ's RFC was inconsistent with the hypothetical question he posed to the VE; and (3) the ALJ did not adequately account for her limitations with respect to concentration, persistence and pace.

## III.    DISCUSSION

### A.      *Framework for Disability Determinations*

---

[2] This RFC appears to permit Plaintiff to work at all exertional levels. However, later in the opinion, the ALJ states that he limited Plaintiff to "light" jobs (Tr. 24).

Under the Social Security Act (the "Act") Disability Insurance Benefits and

Supplemental

Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*,

475

F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity,
> benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of
> impairments that "significantly limits . . . physical or mental ability to do basic
> work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a
> severe impairment that is expected to last for at least twelve months, and the
> severe impairment meets or equals one of the impairments listed in the
> regulations, the claimant is conclusively presumed to be disabled regardless of
> age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits
> are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work,
> if other work exists in the national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534

(6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers

to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.    Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

### C.    *Analysis*

Plaintiff's first argument is that the ALJ failed to adequately develop the record, by not obtaining x-rays of her back and hands, which indicate she has arthritis. This argument is well-taken. Because Plaintiff's first argument warrants remand, it is unnecessary to reach her other arguments.

Social security proceedings – unlike judicial ones – are inquisitorial, not adversarial. *See, e.g., Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (plurality). Consequently, an ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 110-11 (citing *Richardson v. Perales*, 402 U.S. 389, 400-401 (1971)). The Sixth Circuit has also recognized an ALJ's obligation to fully develop the record. *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392 (6th Cir. 2010) (citing *Lashley v. Sec'y of Health & Human*

*Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (noting that an ALJ has the ultimate responsibility for ensuring that every claimant receives a full and fair hearing) (citing *Richardson*, 402 U.S. at 411)).  An ALJ has a duty to develop the record even where, as here, the claimant was represented by counsel.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993).

Furthermore, the Agency's regulations *require* the ALJ make every reasonable effort to help the claimant get medical reports from her own medical sources.  *See* 20 C.F.R. § 404.1512(d).[3]   Under 20 C.F.R. § 404.1512(e)[4], an ALJ generally must re-contact the claimant's

_____

[3]  20 C.F.R. § 404.1512(d) provides as follows:

Our responsibility.  Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

[4]  20 C.F.R. § 404.1512(e) provides as follows:

Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

(2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not

medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled.

Where the claimant is without counsel, incapable of presenting an effective case, and unfamiliar with hearing procedures, the ALJ has a "special, heightened duty" to develop the administrative record and ensure a fair hearing.[5] *See Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x 456, 459 (6th Cir. 2008) (citing *Lashley*, 708 F.2d at 1051–52); *Nabours v. Comm'r of Soc. Sec.*, 50 Fed. App'x 272, 275 (6th Cir. 1986).  To satisfy this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (internal citations omitted).  This is especially true in situations where the unrepresented claimant suffers from a mental impairment.[6] *See Morlando v. Astrue*, 2011 WL 4396785, at *4 (D.Conn. Sept.20, 2011) ("In addition to the special solicitude required for *pro se* claimants...extra care [is] necessary when adjudicating the claims of a litigant whose mental capacity is in question.") (internal citations omitted).

Whether an ALJ has satisfied his "special, heightened duty" to develop the record is determined on a case-by-case basis.  *See Osburn v. Apfel*, 1999 WL 503528, at *7 (6th Cir. July 9, 1999) (internal citation omitted).  Although there is no bright line test to be applied, courts have recognized that, "[f]ailure by an ALJ to fully develop the factual record in a particular matter is often evidenced by superficial or perfunctory questioning, as well as a failure to obtain all available medical records and documentation." *Vaca v. Comm'r of Soc. Sec.*, 2010 WL

---

provide the necessary findings.

[5] Plaintiff is represented by counsel in this action for judicial review. But was not represented by counsel at the hearing before the ALJ.

[6] The ALJ recognized that Plaintiff suffered from depression (Tr. 18).

821656, at * 6 (W.D. Mich. Mar.4, 2010) (citing cases).  Indeed, courts have explicitly stated:

"An ALJ has the duty to develop the record by obtaining pertinent, available medical records

which come to his attention during the course of the hearing." *Figard v. Comm'r of Soc. Sec.*,

2010 WL 3891211, at *7 (W.D.Mich. July 1, 2010) (quoting *Carter v. Chater*, 73 F.3d 1019,

1022 (10th Cir. 1996)).

 In this case, the ALJ noted in his written opinion that Plaintiff's treating physician

ordered x-rays of her chest, back and hands (Tr. 17).  Indeed, Plaintiff provided the ALJ with

copies of the physician orders (Tr. 487).  The x-ray order was dated April 20, 2011, just 20 days

before the May 10, 2011 hearing; Plaintiff testified at the hearing that the x-rays were preformed

just two weeks prior to the hearing and that they showed that she has "arthritis in my back and

my hands" (Tr. 38).  Yet, the ALJ did not attempt to retrieve these records, nor did the ALJ find

that Plaintiff's arthritis rose to the level of a "severe" impairment at step two of the analysis.

This was error.

 Step two of the disability analysis has been construed as a *de minimis* hurdle in the

disability determination process.  *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing

*Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986); *Salmi v. Sec'y of

Health & Human Servs.*, 774 F.2d 685, 690-92 (6th Cir. 1985); *Farris v. Sec'y of Health &

Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985)).  "Under the prevailing *de minimis* view, an

impairment can be considered not severe only if it is a slight abnormality that minimally affects

work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862 (citing

*Farris*, 773 F.2d at 90).  If Plaintiff's x-rays do, in fact, confirm that she has arthritis in her back

and hands, it is highly likely that – given the *de minimus* hurdle of step two – the ALJ will find

that her arthritis is a "severe" impairment and, consequently, the entire subsequent analysis

changes.

In sum, this case should be sent back to the ALJ to consider the x-rays – and any doctor's interpretation of those x-rays – ordered by the Great Lakes Family Medical Center.

## III.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that: Plaintiff's motion for summary judgment be **GRANTED**; Defendant's motion for summary judgment be **DENIED**; and this matter be **REMANDED** for further proceedings consistent with the discussion above.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise  response  proportionate to the objections in length and complexity.  *See* Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule

without awaiting the response.


                                s/Mark A. Randon_____

                                Mark A. Randon

                                United States Magistrate Judge

Dated:  January 28, 2013

### *Certificate of Service*

     *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 28, 2013, by electronic and/or ordinary mail.*

                                *s/Eddrey O. Butts_____*

                                *(Substitute) Case Manager*